UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL W. SCOTT,<br><br>            Plaintiff,<br><br>    v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY,<br><br>            Defendant. | Case No. 22-cv-601 (CRC) |

**OPINION**

While riding the subway one evening, Plaintiff Carol W. Scott fell and broke her femur after the train jerked forward unexpectedly at her station. Ms. Scott brought a claim of negligence against Defendant Washington Metropolitan Area Transit Authority ("WMATA") based on the train operator's alleged failure to warn passengers before repositioning the train. After a three-day trial, a jury found for Scott and awarded her $1.6 million in damages. WMATA now moves for judgment as a matter of law, or in the alternative for a new trial, largely rehashing arguments made pretrial in its motion for summary judgment and motions in limine. The Court will deny WMATA's motion.

**I.     Background[1]**

On the evening of September 23, 2019, Plaintiff Carol W. Scott, then 79 years old, boarded an Orange Line Metro train en route to McPherson Square. As the train pulled into McPherson Square station, Ms. Scott heard the following announcement: "McPherson Square, doors opening." Shortly after Scott rose from her seat to depart, the train jerked forward without

---

[1] The facts described herein are drawn from transcripts of the trial proceedings and from previous opinions the Court has issued in this case.

warning. Scott fell and fractured her femur, requiring intensive surgery to implant permanent orthopedic hardware. To date, she walks with a cane and can no longer travel to Native American reservations for her work on behalf of veterans, as she did prior to her injury, or engage in other daily activities she used to enjoy.

Scott filed this action against WMATA in March 2022, alleging one count of negligence arising out of the train operator's alleged failure to warn passengers before repositioning the train. After a three-day trial lasting from April 21 to April 23, 2025, the jury returned a verdict for Scott and assigned damages in the amount of $1,600,000. Following the close of Scott's case-in-chief, WMATA moved for judgment as a matter of law. The Court reserved its ruling on the motion and submitted the case to the jury. WMATA now renews its motion for judgment as a matter of law and moves, in the alternative, for a new trial. Scott has opposed.

## II.  Legal Standards

Under Federal Rule of Civil Procedure 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may "grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1)(B). A court that does not grant such a motion during trial is "considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). A losing party may renew its Rule 50(a) motion after the jury is discharged, but it must limit this post-trial Rule 50(b) motion to "those grounds that were specifically raised in the prior motion." Rice v. District of Columbia, 818 F. Supp. 2d 47, 54 (D.D.C. 2011) (citing Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001). When

2

presented with a Rule 50(b) motion, the court may "direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b)(3).

The same legal standard applies to motions for judgment as a matter of law made during and after trial. Beyene v. Hilton Hotels Corp., 958 F. Supp. 2d 247, 249 (D.D.C. 2013). Although jury verdicts are not to be "lightly disturb[ed]," McGill v. Muñoz, 203 F.3d 843, 845 (D.C. Cir. 2000), such a motion should be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. P. 50(a)). As when considering a motion for summary judgment, a court ruling on a Rule 50(b) motion "must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence." Rice, 818 F. Supp. 2d at 54. But it must also "give credence to . . . evidence supporting the moving party that is uncontradicted and unimpeached, a[t] least to the extent that the evidence comes from disinterested witnesses." Id. (quoting Reeves, 530 U.S. at 151).

**III. Analysis**

A. Scott Established A National Standard of Care

WMATA first contends that Scott failed to establish that there is a national standard of care requiring safety warnings before repositioning a subway train. Mot. for JMOL at 4–13. The Court's prior opinion granting in part and denying in part WMATA's motion in limine to exclude Scott's expert, Dr. Carl Berkowitz, disposes of this argument. See Op. & Order, ECF No. 52.

WMATA first renews its contention that Dr. Berkowitz should not have been qualified as an expert in the field of transportation safety under Federal Rule of Evidence 702. Mot. for

3

JMOL at 6–8.  This argument need not detain the Court for long.  As explained in the Court's prior opinion, Dr. Berkowitz has "over twenty years of experience working in the transportation industry" and "has worked directly with the New York Metropolitan Transportation Authority and other agencies, taught transportation safety courses to their personnel, and served on professional transit committees."  Op. & Order at 5.  He also based his opinion on "informal conversations with employees of the New York City Transit Authority and [the Southeastern Pennsylvania Transportation Authority] and knowledge gleaned through his work on transit committees."  Id. (citations omitted).  At trial, Dr. Berkowitz testified extensively about his experience in the transportation industry, including his PhD in transportation engineering and planning and his work on behalf of the New York City Department of Transportation.  See Trial Tr. at 315:17–328:13.  Given Dr. Berkowitz's relevant professional qualifications and experience, the Court did not abuse its discretion by qualifying Dr. Berkowitz as an expert.

Next, WMATA argues that Dr. Berkowitz's trial testimony did not establish a national standard of care because he did not offer copies of other transit systems' standard operating procedures or otherwise support his opinion.  Mot. for JMOL at 8–11.  This argument fails for two reasons.  First, as explained in the Court's prior opinion, "although Dr. Berkowitz did not support his opinions about other transit systems by reference to their written procedures, that omission alone does not disqualify him as an expert."  Op & Order at 5.  "[A]n expert may be qualified on the basis of his or her practical experience."  Khairkhwa v. Obama, 793 F. Supp. 2d 1, 11 (D.D.C. 2011).

Second, as just explained, Dr. Berkowitz rooted his opinion in his work experience at major transit authorities and his conversations with their employees.  At trial, Dr. Berkowitz testified, subject to cross-examination, that his sources included:  New York City Transit

4

Authority employee Orlando Jimenez, his personal experience with the Boston transit authority, Chicago transit authority employees, and his work on various safety committees. Trial Tr. at 341:12–342:22, 344:9–346:22. Based on all that, he testified that failing to give a safety warning prior to repositioning the train violated the national standard of care. Id. at 347:9–11. The Court would add that Dr. Berkowitz's opinion respecting a national standard of care was also supported by WMATA's own train repositioning procedures, a written copy of which was introduced at trial. Id. at 402:11–12 (discussing Exhibit 1, WMATA's Standard Operating Procedure 50). Accordingly, Dr. Berkowitz "set forth concrete bases for his expert testimony" and the jury was entitled to find that WMATA violated the national standard of care. See Op & Order at 5 (citing Sherrod v. McHugh, 334 F. Supp. 3d 219, 259 (D.D.C. 2018)).

      WMATA next argues that the Court abused its discretion by permitting Dr. Berkowitz to supplement his initial expert report. Mot. for JMOL at 11–13. After denying both parties' motions for summary judgment, the Court indicated its willingness to reopen discovery so that "Scott can supplement her expert report on the standard of care, and WMATA, in turn, can depose Dr. Berkowitz and potentially retain its own expert[.]" Summ. J. Op. & Order, ECF No. 34, at 20. Over WMATA's objection, see Joint Status Report, ECF. No. 40, the Court then reopened discovery for a two-month period. Pretrial & Scheduling Order, ECF No. 41.

      "[T]he Court has inherent authority to modify pre-trial procedural deadlines to serve the best interests of justice." Gomez v. Trs. of Harvard Univ., 676 F. Supp. 13, 15 (D.D.C. 1987). WMATA offers no reason why the Court could not extend the discovery deadline, except the bare assertion that the extension "unfairly prejudiced" it. Mot. for JMOL at 13. But WMATA offers no facts supporting its claim of prejudice. And its argument is particularly untenable given that the Court afforded WMATA the opportunity to take Dr. Berkowitz's deposition and to

5

designate an expert of its own to rebut his testimony, mitigating any possible prejudice. Pretrial & Scheduling Order at 1. WMATA ultimately chose not to call its own expert.

Next, WMATA complains that the Court "unfairly precluded" it from cross-examining Dr. Berkowitz in front of the jury about instances in which other courts excluded his testimony. Mot. for JMOL at 13–14. WMATA misstates the Court's ruling. At trial, the Court instructed WMATA's counsel that it could voir dire Dr. Berkowitz's expert qualifications outside the presence of the jury. Trial Tr. at 302:6–10. That is standard practice. See, e.g., Kellner v. NCL (Bahamas), Ltd., No. 15-cv-23002, 2016 WL 8679313, at *1 (S.D. Fla. Aug. 17, 2016). The Court then informed WMATA that it would be permitted to cross-examine Dr. Berkowitz on matters related to his "credibility or truthfulness" in the presence of the jury. Trial Tr. at 303:2. WMATA chose not to do so, leaving it no ground on which to complain now.

### B. The "Unusual and Extraordinary Force" Test Does Not Apply

WMATA next argues that the Court should have required Scott to demonstrate that the train's jerk was of "unusual and extraordinary force" to succeed on her negligence claim. Mot. for JMOL at 14–19. At summary judgment, the Court held that this "unusual and extraordinary force" test does not apply if "a reasonable person in Scott's shoes would have believed it was safe to begin alighting after the train had come to a complete stop at the station and announced" that doors were opening. Summ. J. Op. at 12. The Court then reserved this "fact-intensive inquiry" for the jury. Id. And by rejecting WMATA's assumption-of-risk defense, the jury implicitly sided with Scott on the issue. Verdict at 2.

WMATA now argues that, contrary to the Court's summary-judgment holding, the facts adduced at trial are such that no reasonable person could have believed it was safe to alight after the train stopped. Mot. for JMOL at 16–19. WMATA relies on three facts: the operator

6

announced "McPherson square, doors opening" while pulling into the station, the train had repositioned at other stations along the route, and Ms. Scott did not hear a door chime before standing up. Id.  As already explained, the Court disagrees that no reasonable person could have thought it safe to stand up under these circumstances. Summ. J. Op. at 12.  True, Ms. Scott's trial testimony differed slightly from her deposition—at trial, she testified that she heard the "doors opening" announcement as the train pulled into the station, not after it had stopped. Compare Trial Tr. at 255:10–19, with Summ. J. Op. at 2 (citing Scott Dep. at 27:1–13).  But that minor discrepancy does not upset the Court's prior determination that whether it was reasonable to disembark is a fact question properly resolved by the jury.

  C. Ms. Scott Was Not Contributorily Negligent As a Matter of Law

  WMATA next argues that Ms. Scott was contributorily negligent as a matter of law, so the Court should set aside the jury's verdict finding the opposite. Mot. for JMOL at 20–22. Contributory negligence is established as a matter of law where reasonable persons can draw no inference from the facts other than that the plaintiff failed to act reasonably under the circumstances. Phillips v. Fujitec Am., Inc., 3 A.3d 324, 329–330 n.4 (D.C. 2010).

  The Court's summary-judgment opinion also disposes of this argument.  As the Court already explained, notwithstanding trial evidence that the train had repositioned at other stops along the route—which forms the basis of WMATA's argument—"it is not evident that a reasonably prudent person would have expected the train to lurch forward after it stopped at McPherson Square Station[.]" Summ. J. Op. at 12.  That is so because, following the "doors opening" announcement and the train coming to a stop, it may "appear[] safe to head for the exit" such that many passengers waiting by the doors "will not brace themselves for a sudden

7

movement." Id. at 11, 12. No facts introduced at trial undermine the Court's conclusion in this regard.

      D.   Defendant is Not Entitled to a Partial Judgment on Damages

Next, WMATA contends that "there was no legally sufficient basis for the jury's award of damages" because Scott did not introduce any medical bills at trial. Mot. for JMOL at 23. This argument makes little sense. At trial, Ms. Scott testified to the amount she paid in medical expenses—approximately $229,000. Trial Tr. at 249:15. Her counsel's decision not to introduce the actual bills thus appears to be of little significance, especially since WMATA does not dispute that figure. See id. at 240:14–16. Moreover, as Scott points out, it is not clear from the amount awarded in damages "what value (if any) was assigned to reimbursement for medical expenses," rather than, for instance, pain and suffering. Opp'n to Mot. for JMOL at 19, ECF No. 74. So, the decision not to introduce her medical bills cannot possibly compel the conclusion that, contrary to the jury's verdict, she was entitled to no damages at all.

      E.   Defendant Is Not Entitled to Remittitur

Lastly, WMATA seeks remittitur, arguing that the $1.6 million award "was unconscionably excessive." Mot. for JMOL at 24–26. In the District of Columbia, a verdict is excessive when it is so large that it is "beyond all reason, or is so great as to shock the conscience." Phillips v. District of Columbia, 458 A.2d 722, 724 (D.C. 1983) (citation omitted). Trial evidence established that Ms. Scott's injury—in addition to the $229,000 in medical expenses just discussed—caused her terrible pain, Trial Tr. at 185:23–186:2, required a permanent implant in her leg, id. at 194:1–4, still causes her problems with her balance and lower back, id. at 194:7–12, requires her to walk with a cane, Trial Tr. at 191:9–11, and prevents her from engaging in many activities she previously enjoyed, such as gardening, id. at 193:10–

8

12. She has also been unable to travel to Native American reservations conduct her work with veterans as she did prior to her fall. Id. at 194:14-20. Given all this, a $1.6 million award, while generous perhaps, does not "shock the conscience." Phillips, 458 A.2d at 724.

In the face of the above, WMATA's only argument for remittitur is that Ms. Scott's counsel displayed a Powerpoint slide during his opening statement "suggesting that the total award equal $229,000 plus 90%." Mot. for JMOL at 25 (citation omitted). First of all, it is unclear how WMATA's current objection to this slide supports its remittitur request or even how the slide relates to the ultimate sum awarded by the jury. Second, WMATA did not object to this slide at trial, so it cannot do so now. Trial Tr. at 122:3–10 (raising other objections to counsel's Powerpoint slides).[2]

For the first time in its reply, WMATA also cites a 1992 case in which a court in this district granted remittitur, reasoning that $460,000 excessively compensated the plaintiff's rotator cuff injury because he was "back at work as a machinist" and had "demonstrated in open court, before the jury, that he does have extensive use of his right arm and shoulder." Richardson v. Nat'l R.R. Passenger Corp., No. 90-1592, 1992 U.S. Dist. LEXIS 1974, at *4 (D.D.C. 1992); see Reply at 12, ECF No. 76. That case is clearly distinguishable. As just noted, undisputed evidence showed that Ms. Scott's broken femur was extremely painful, required extensive surgery and rehabilitation, and continues to disrupt her work and daily activities. Accordingly, the Court will decline to order remittitur.

---

[2] Rather, it was the Court who admonished Ms. Scott's counsel for displaying the slide after assuring the Court at the pretrial conference that, consistent with the Court's practice, he would not suggest a specific damages award to the jury. Trial Tr. at 173:23–175:1. In the Court's view, the "$229,000 plus 90%" graphic ran afoul of that assurance. It at least should have been flagged for the Court's attention prior to openings. Still, even if displaying the graphic to the jury was out of bounds, WMATA has not come close to establishing that it somehow led to a conscience-shocking damages award.

9

### IV. Conclusion

For the foregoing reasons, the Court will deny WMATA's motion for judgment as a matter of law or, in the alternative, for a new trial. A separate Order accompanies this opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>August 1, 2025</u>